Michael ZUMERLING, Terry L. Levan, Paton P. Hodge, James J. McGinley, Samuel Cullum, James R. Cyr, Allen Cyr, Paul Kaylor, Larry Rettig, Norman Whitehurst, Herbert D'Albini, General Granville, Jr., Edward R. Toms, Leonard Sorrentino, Plaintiffs,

v.

John O. MARSH, Jr., Secretary Department of the Army of the United States of America, John F. Lehman, Jr., Secretary of Department of the Navy of the United States of America, Verne Orr, Secretary Department of the Air Force of the United States of America, Donald L. Custis, M.D., Acting Administrator Veterans Administration of the United States of America, United States of America, Defendants.

Civ. A. No. 81–963.

United States District Court, W.D. Pennsylvania.

July 30, 1984.

538

Thomas A. Woodley, Richard J. Hirn, Mulholland & Hickey, Washington, D.C., Ronald J. Zera, Pittsburgh, Pa., for plaintiffs.

Judith K. Giltenboth, Asst. U.S. Atty., Pittsburgh, Pa., Frances L. Nunn, Robert A. Reutershan, Civil Division, Dept. of Justice, Washington, D.C., for defendants.

Fred E. Schillreff, Executive Director, Federal Fire Fighters Association, Sterling, Va.

## OPINION

MANSMANN, District Judge.

This matter comes before the Court on cross-motions for summary judgment. For the reasons and to the extent set forth in this Opinion, the motions are denied in part and granted in part.

Also before this Court are Defendants' Motion to Dismiss all Government Officials Named in their Official Capacities, Plaintiffs' Motion for the Imposition of Sanctions and Defendants' Motion for a Protective Order. For the reasons set forth in this Opinion, Defendants' Motion to Dismiss is granted only to the extent that all government officials sued herein whose agencies do not employ Plaintiffs are dismissed. In light of this, the motions for

sanctions and for a protective order are denied as moot.

## BACKGROUND

The Plaintiffs in this action are either current or former federal employees employed by the Departments of Army, Navy, Air Force and Justice as well as the Veterans Administration and the General Services Administration. All Plaintiffs are or were employed in fire protection or law enforcement activities at various locations.

Although the Plaintiffs originally commenced this action as a class action, prior to seeking certification, Plaintiffs decided to pursue their claims individually. Since this action has commenced, more than 4500 individuals presently or formerly engaged in firefighting or law enforcement activities and employed by the federal agencies referenced above have filed consents with this Court to become plaintiffs.

In their Complaint, Plaintiffs request the following relief: declaratory judgment setting aside 5 C.F.R. § 551.432 and declaring that Defendants have violated the Fair Labor Standards Act ("FLSA"); an injunction preventing Defendants from violating the FLSA by unlawfully withholding minimum wages and appropriate overtime compensation; an order compelling Defendants, under Plaintiffs' counsel's supervision, to make full and accurate accounting of all compensation due each Plaintiff, and thereupon, to enter judgment under 29 U.S.C. § 216(b) for sums due plus interest and liquidated damages; an order compelling Defendants to comply with their statutory duty owed to Plaintiffs; and the award of reasonable attorneys' fees, costs and disbursements in connection with this action.

In their First Claim, Plaintiffs allege that the Office of Personnel Management[1] ("OPM") acted arbitrarily, capriciously and abused its discretion in promulgating 5 C.F.R. § 551.432 which excludes "sleep time" from compensable hours of federal employees engaged in fire protection or law enforcement activities when their tours of duty exceed 24 hours.[2] Plaintiffs also allege that they are entitled to interest, liquidated damages, attorneys' fees and costs under § 16(b) of the FLSA, 29 U.S.C. § 216(b).[3]

Plaintiffs allege in their Second Claim that since May 1, 1974, Defendants have paid Plaintiffs in wages less than the applicable minimum wage in violation of § 6 of the FLSA, 29 U.S.C. § 206 and of "applicable regulations, rules, interpretations and Federal Personnel Manual ("F.P.M.") Letters."

In their Third and Fourth Claims, Plaintiffs allege that Defendants have failed to pay them the required overtime wage of "one and one-half times their regular rate for all hours worked in excess of hourly levels prescribed by the FLSA," in violation of §§ 7(a) and 7(k) of the FLSA, 29 U.S.C. §§ 207(a) and 207(k) as well as various "applicable regulations."

In Plaintiffs' Fifth and Sixth claims, respectively, they allege that Defendants' method of computation of overtime compensation is erroneous (due to allegedly improperly computed "regular rate" of pay), and that therefore they receive overtime compensation on an incorrect basis, that they have been denied equal protection in violation of the Fifth Amendment, when compared to other general schedule employees of Defendants.

In Plaintiffs' Seventh Claim, they allege that Defendants owe them a statutory duty by "ensur[ing] that the FLSA and related rules, interpretations and Federal Personnel Manual letters are properly administered and applied to Plaintiffs." Plaintiffs

---

**1.** This office was formerly named the Civil Service Commission.

**2.** 5 C.F.R. § 551.432(b) provides in part as follows:
"[f]or employees engaged in fire protection activities or law enforcement activities, the

exclusion of sleep time is appropriate for tours of duty *of more than 24 hours* only." (Emphasis in original.)

**3.** This specific request for relief is also made in connection with Plaintiffs' Second and Third Claims.

further allege that this mandatory statutory duty is nondiscretionary.

## CROSS-MOTIONS FOR SUMMARY JUDGMENT

### The Contentions of the Parties

The Defendants moved this Court for summary judgment on various grounds.

Defendants claim that the Plaintiffs lack standing to challenge 5 C.F.R. § 551.432(b) (which excludes "sleep time" for federal firefighters or law enforcement personnel whose tours of duty are greater than 24 hours) because none of the Plaintiffs have tours of duty in excess of 24 hours. Therefore, Defendants contend, Plaintiffs have not sustained "injury in fact." Defendants also assert that Plaintiffs have not demonstrated that Plaintiffs have had "sleep time" deducted, and that, in any event, "sleep time" has not been deducted from their compensable hours.

The Defendants also claim, in any event, that they have a viable good faith defense to any of Plaintiffs' claims under 29 U.S.C. § 259, as Defendants assert that they acted in good faith and in conformity with administrative regulations, orders and rulings approved by agencies of the United States.

Regarding Plaintiffs' minimum wage, overtime and regular rate claims, Defendants assert that their methodology for computing Plaintiffs' compensation was based on the guidelines set forth in F.P.M. Letter 551–5 which they were bound to follow.[4] Defendants further contend that each agency which employs Plaintiffs has relied upon and conformed with the requirements of F.P.M. Letter 551–5.

Additionally, Defendants contend that Plaintiffs' Fifth Amendment claims do not state cognizable claims for money damages, and that in any event, the United States has not waived its sovereign immunity with respect to these claims.

Alternatively, Defendants assert that because Plaintiffs' claims appear to be individually in excess of $10,000, this matter should be transferred to the Claims Court in light of 28 U.S.C. § 1346(a)(2) which provides that the Claims Court has exclusive jurisdiction over non-tort claims against the United States which are in excess of $10,000. Defendants further claim that the FLSA does not confer jurisdiction upon the district courts in connection with suits against the United States for overtime and minimum wages for claims which are in excess of $10,000.

Due to the foregoing, Defendants claim they are entitled to summary judgment in this case, or are at least entitled to the transfer of this action to the Claims Court.

The Plaintiffs, in opposition to Defendants' Motion for Summary Judgment and in support of their Motion for Summary Judgment, assert that the OPM was without the authority to promulgate 5 C.F.R. § 551.432(b), and that only the Secretary of Labor has such authority. However, Plaintiffs do not dispute the OPM's authority to issue letters such as F.P.M. Letter 551–5, and do not challenge its application to the Plaintiffs.

With respect to the exclusion of "sleep time" (for those firefighters or law enforcement individuals whose tours of duty are greater than 24 hours), Plaintiffs claim that the exclusion of "sleep time" without these employees' individual agreements is not in accordance with the law. Plaintiffs further assert that they possess standing to attack the regulation as they claim that they are subject to the regulation any time that they are required to work a shift or "tour of duty" greater than 24 hours (in an emergency, for example). Notwithstanding these claims, Plaintiffs initially did not dispute that their regularly scheduled "tours of duty" are 24 hours.[5]

---

**4.** It is to be noted, as set forth *infra,* that Plaintiffs do not challenge F.P.M. Letter 551–5.

**5.** As noted *infra,* Plaintiffs seemed to have modified their original position that their "tours of duty" are 24 hours in their reply papers, as they

submitted an affidavit from a firefighter, Ronald Bailey, who asserted that he works a 72 hour "tour of duty" over a 7 day period. *See also,* n. 15, *infra* and corresponding text.

Additionally, Plaintiffs vehemently dispute the amount of their hourly rates and overtime rates as calculated by Defendants. Plaintiffs assert that as a result of Defendants' method of computation, they are paid sub-minimum wage, and are also not paid time and one-half for overtime, as required by the FLSA.

Plaintiffs also assert that Defendants have failed to comply with their "statutory duties" by not following the compulsory requirements of the FLSA, and therefore that this Court should issue a writ of mandamus pursuant to 28 U.S.C. § 1361.

Additionally, Plaintiffs contend that Defendants' good faith argument is baseless. Plaintiffs assert, *inter alia,* that 29 U.S.C. § 259 does not apply to the United States.

Further, in response to Defendants' argument that this Court lacks subject matter jurisdiction under the Tucker Act and that this case should be transferred to the Claims Court, Plaintiffs assert that this matter is properly before this Court. In this connection, Plaintiffs assert that federal employees, like employees from the private sector, are not precluded from adjudicating their FLSA claims in district courts. Plaintiffs also claim that this Court has jurisdiction to hear Plaintiffs' claims because, apart from the FLSA, Plaintiffs' action has independent jurisdictional bases inasmuch as Plaintiffs' claims arise under federal law.[6] Lastly, Plaintiffs assert that since not all of the claims exceed $10,000, that this Court has jurisdiction because the Claims Court and the District Court have concurrent jurisdiction under 28 U.S.C. § 1346(a)(2) for claims equal to or below this amount.

In reply to Plaintiffs' arguments, Defendants again assert that the OPM had authority to promulgate 5 C.F.R. § 551.-432(b) as the OPM administers the FLSA to the federal sector, whereas the Secretary of Labor administers the FLSA to the private sector. In support thereof, Defendants rely on § 4(f) of the FLSA, 29 U.S.C. § 204(f) which provides in pertinent part: "[n]otwithstanding any other provision of this Act, or any other law, the Civil Service Commission [now OPM] is authorized to administer the provisions of this Act." Additionally, Defendants submit that the exclusion of "sleep time" is correct, although not relevant in this context. In any event, Defendants reassert that Plaintiffs are without standing to challenge the regulation because they do not have regular shifts or "tours of duty" which exceed 24 hours and no Plaintiff has had "sleep time" deducted. Therefore, Defendants claim that Plaintiffs have not been "injured in fact."[7]

Defendants also reiterated that Plaintiffs are paid at least minimum wage, and are and have been compensated for overtime in accordance with the FLSA (time and one-half). Defendants also indicate that hourly "regular rate" of pay and hourly "basic pay" have different meanings and have different statutory sources, and are not to be used interchangeably. Additionally, Defendants submit that "annual premium pay" and overtime pay are not synonymous. In their reply papers, Defendants also illustrate how Plaintiffs' pay is computed.

Regarding Plaintiffs' claim for a writ of mandamus, Defendants again dispute that Plaintiffs have demonstrated entitlement to this relief.

Defendants also oppose Plaintiffs' argument that Defendants are not permitted to utilize 29 U.S.C. § 259, as they have acted

---

**6.** Plaintiffs assert that this Court also has jurisdiction over this matter because they are seeking an injunction and a writ of mandamus under 28 U.S.C. § 1331 and 28 U.S.C. § 1337, respectively. Due to this Court's decision with regard to subject matter jurisdiction, these arguments need not be addressed.

**7.** Defendants also state that if a firefighter were called to work extra time in an emergency, this would not result in a conversion of the individual's "tour of duty" to one greater than 24 hours. Rather, that individual would be compensated on an overtime basis. Moreover, Defendants assert that Plaintiffs have failed to show that a single Plaintiff has had "sleep time" deducted as a result of working additional unscheduled overtime.

in good faith, relied upon various regulations and acted in conformity with those regulations, and again assert that this defense is available to the United States.

Regarding subject matter jurisdiction, Defendants concede that with respect to suits against the United States relating to the FLSA, the Claims Court and the district courts have concurrent jurisdiction, so long as such claims do not exceed $10,000. In any event, Defendants contend that those six Plaintiffs who have submitted affidavits indicating that their claims are less than $10,000 have waived the rights to any greater recovery.

Plaintiffs also submitted a reply brief. In doing so, they largely reiterated their previous arguments. However, with respect to their argument that they have standing to challenge 5 C.F.R. § 551.432(b), Plaintiffs appear to have changed their position on the meaning of "tour of duty." For the first time, Plaintiffs assert, accompanied by Affidavit, that one of the Plaintiffs, Ronald Bailey has a "tour of duty" which is 72 hours.[8]

Because of this individual, Plaintiffs contend that they have standing to challenge the regulation. Plaintiffs also attempt to define "tour of duty" to include all irregular or unscheduled time, while conceding that some Plaintiffs in this lawsuit stated under oath that they do not have "regularly scheduled tours of duty of more than 24 hours."

Plaintiffs have also submitted a "Supplemental Memorandum" in which they reassert that the Department of Labor alone has the duty to issue regulations concerning the FLSA.

The foregoing arguments will be addressed below.

### Subject Matter Jurisdiction

At the outset, this Court will address Defendants' assertion that this Court lacks subject matter jurisdiction, because if Defendants are correct, this Court will be without the authority to resolve the other issues now pending.

The Tucker Act, 28 U.S.C. §§ 1346(a)(2)[9] and 1491[10] and various other provisions, provides sources of jurisdiction in connection with cases against the United States not sounding in tort.

Based on the Tucker Act, so long as the Plaintiffs' non-tort claims do not exceed $10,000 in amount, this Court has concurrent jurisdiction with the Claims Court over this matter. However, if Plaintiffs' claims exceed this amount, then the Claims Court would have exclusive jurisdiction over that portion of this matter.

The Tucker Act "is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages ... the Act merely confers jurisdiction ... whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976) (citation omitted).

■ Further, in determining whether the district court has jurisdiction over a non-tort action involving the United States as a defendant, although the aggregate claims may total an amount exceeding $10,000,

---

**8.** *See*, n. 5, *supra*.

**9.** 28 U.S.C. § 1346(a)(2) provides in pertinent part:
> (a) The district courts shall have original jurisdiction, concurrent with the United States Claims Court, of ...
> (2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, ... or for liquidated or unliquidated damages in cases not sounding in tort.

**10.** 28 U.S.C. § 1491 provides in pertinent part:
> (a)(1) The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

what is controlling is the amount of each individual claim. If each claim presented separately does not exceed $10,000 or if the claimant has waived recovery of an amount greater than $10,000, then Tucker Act jurisdiction under 28 U.S.C. § 1346(a)(2) is properly invoked by the district court. *Commonwealth of Pennsylvania v. National Association of Flood Insurers*, 520 F.2d 11, 25 (3d Cir.1975). The *National Association* Court held that in determining Tucker Act jurisdiction, a class action does not preclude the finding of concurrent jurisdiction under 28 U.S.C. § 1346(a)(2), so long as the individual claims meet the statutory requirements. The fact that this case is not a class action, but instead an action by over 4500 individual plaintiffs is of no significance in this determination, as their claims are to be viewed individually.[11]

■ Further, in ascertaining whether the amount claimed exceeds $10,000 for Tucker Act purposes in connection with claims under the FLSA, since attorneys' fees are provided for in 29 U.S.C. § 216(b), the request for attorneys' fees is to be included in the computation. *Graham v. Henegar*, 640 F.2d 732 (5th Cir.1981).

■ Therefore, in the instant action, in order for this Court to have subject matter jurisdiction, the Plaintiffs' claims, including attorneys' fees must not exceed $10,000 individually.[12]

In this connection, with respect to six Plaintiffs, their claims are clearly for amounts of less than $10,000 as each has submitted an affidavit stating that they are not seeking recovery in excess of $10,000.[13] Therefore, even if it is later determined

that their claims, including attorneys' fees, should they be entitled to them, are valued in excess of $10,000, these six individuals have affirmatively waived recovery of more than this amount. With respect to these six individuals, this Court clearly has subject matter jurisdiction.

In regard to all other Plaintiffs, it appears that this Court has jurisdiction over the adjudication of their claims as these claims all appear to be for amounts less than $10,000, and Plaintiffs have not asserted otherwise.

Plaintiffs have not set forth the amounts requested in their Complaint nor in any subsequent pleading. Moreover, in their brief in support of their Motion for Summary Judgment they assert that the damages have yet to be calculated but that hopefully, after liability is resolved, damages can be decided on an "amicable basis." Further, in their brief, Plaintiffs admit that "virtually all of the claims of Plaintiffs do not exceed $10,000."

Clearly, at this point in time, Plaintiffs' individual claims cannot be deemed to be in excess of $10,000.[14] Therefore, this Court has subject matter jurisdiction over this matter. However, in the event that any of Plaintiffs' claims become valued in excess of $10,000, inclusive of attorneys' fees, absent a valid waiver to recover greater than the jurisdictional amount, (including attorneys' fees), this Court would be without jurisdiction to hear those matters.

*Standing to Challenge 5 C.F.R. § 551.-432(b)*

■ The Plaintiffs have challenged the authority of the OPM to promulgate 5

---

**11.** Moreover, contrary to what has been asserted by the Plaintiffs, the *National Association* Court does not hold that if a single Plaintiff's claim is for less than $10,000 the entire matter may properly be in the district court. Rather, the Court simply stated: "[a]ccordingly, if the district court would otherwise have had jurisdiction over each class member's claim were such claim presented separately, Tucker Act jurisdiction would have been available even though when all individual claims were aggregated the total amount claimed exceeded one billion dollars." *Id.* at 25 (citation omitted).

**12.** Plaintiffs have not requested specific amounts in their Complaint, nor have they asserted therein that their claims are in excess of $10,000. This Court must therefore look beyond the Complaint in resolving this question.

**13.** These individuals are Gus Williams, Douglas Fell, Robert Anon, Randy Wilson, James Hooks and Richard Martorana.

**14.** This statement excludes those six individuals set forth in n. 13, *supra*, whose claims are clearly for amounts less than $10,000.

C.F.R. § 551.432(b) which provides, *inter alia:* "[f]or employees engaged in fire protection activities or law enforcement activities, the exclusion of sleep time is appropriate for tours of duty *of more than 24 hours* only." (Emphasis in original).

In order to determine whether this regulation applies to Plaintiffs, *i.e.,* whether Plaintiffs serve "tours of duty" greater than 24 hours, it is necessary to define "tour of duty".

Concerning the FLSA, Attachment 2, subd. C of F.P.M. Letter 551–5 provides in pertinent part:

2. *Tour of Duty*

The term 'tour of duty' as used in section 7(k) of the FLSA, means the period during which an employee is on duty. It may be a scheduled or unscheduled period. Scheduled periods refer to shifts, i.e., the period of time which elapses between scheduled arrival and departure times (as in the case for example, of a firefighter who has a scheduled 24 hour shift from 8:00 a.m. one morning until 8:00 a.m. the next morning; or in the case for example, of a criminal investigator who has a scheduled eight and one-half hour shift from 8:30 a.m. until 5:00 p.m. the same day), or to scheduled periods outside the shift (as in the case for example, of a special detail involving crowd control during a parade or other such event). Unscheduled periods refer to time spent by employees on duty outside their scheduled shift (for example; time spent by firefighters fighting a fire outside their scheduled shift, time spent by police officers in court outside their scheduled shift, time spent by criminal investigators shadowing a suspect in continuation of their scheduled shift, or time spent by employees after a shift in order to complete required work). When an employee is actually on duty fewer hours than those specified in his scheduled shift, the employee's tour of duty is reduced accordingly.

Concerning Title 5, F.P.M. Letter 551–5, Attachment 3, subd. B, provides in pertinent part:

1. *Tour of Duty*

'Tour of duty means the hours of a day (a daily tour of duty) and the days of an administrative workweek (a weekly tour of duty) that are scheduled in advance and during which an employee is required to perform work on a regularly recurring basis' ... All hours the employee is in a pay status (on duty or excused absences with pay) during the regularly scheduled 'tour of duty' are included in hours of work. In addition, the tour of duty may include regularly scheduled overtime work.

NOTE: Under title 5, the term 'tour of duty' means regularly scheduled periods of work only. It does *not* include irregular or occasional (unscheduled) periods of work. Conversely, under section 7(k) of the FLSA, the term 'tour of duty' means the periods during which an employee is on duty including scheduled and unscheduled periods.

As noted above, the Title 5 definition of "tour of duty" excludes unscheduled work where the FLSA does not. In this context, because the Plaintiffs are federal employees, the Title 5 definition applies so long as the FLSA does not provide greater overtime benefits. *See,* F.P.M. Letter 551–5 ¶ 5. The inclusion of unscheduled periods in Plaintiffs' "tours of duty" would not provide greater benefits to them since they would potentially be subject to the deduction of "sleep time" under the FLSA definition. Further, under the Title 5 definition, if an employee is required to work an extra unscheduled period, that employee would be paid overtime compensation. Clearly, Title 5 provides the greater benefits to the federal employees in this instance. Accordingly, in this context, the Title 5 definition is applicable since it is most favorable to federal firefighters and law enforcement personnel.

Thus, a "tour of duty", is equivalent to a "shift" and, for example, could run from 8:00 a.m. one day to 8:00 a.m. the next day, and in the instant context does not include unscheduled periods.

With respect to the length of their "tours of duty", initially Plaintiffs asserted in response to Defendants' Requests for Admissions that "[n]one of the Plaintiffs have regularly scheduled tours of duty of more than 24 hours." Later, in their reply brief, Plaintiffs submitted an affidavit of Ronald Bailey wherein he states, *inter alia:* "I have been working a 72-hour tour of duty, with four days off duty, during each 7-day work period." [15] Thus, the question for immediate resolution is whether this 72 hour period constitutes a singular "tour of duty" or three separate "tours of duty."

If "tour of duty" were to mean continuous time on duty during a stated work period, the FLSA and F.P.M. Letter 551–5 would be more explicit in this regard. Further, § 7(k) of the FLSA refers to "*tours* of duty" (not "*tour* of duty"), even when referring to a work period of 7 days. Additionally, "tour of duty" is synonymous with "shift" which clearly would not last for three days. Moreover, the example given in F.P.M. Letter 551–5 illustrates a 24 hour shift or tour of duty from 8 a.m. to 8 a.m. the next day. Further, particularly since it is common for federal firefighters to work 72 hours over a 7 day period or 144 hours in a 14 day work period,[16] it is unlikely that "tour of duty" was intended to be a 72 hour period without more explicitness in either the regulation or the statute.

Accordingly, this Court finds that the 72 hour period during which Ronald Bailey and other Plaintiffs work consists of three 24 hour "tours of duty", not a single 72

hour "tour of duty." Therefore, the "tours of duty" for the individual Plaintiffs in this suit does not exceed 24 hours.

We turn then to the threshold issue of whether Plaintiffs have standing to attack 5 C.F.R. § 551.432(b) in light of this Court's finding that their "tours of duty" do not exceed 24 hours.

In order to have standing to attack the action of a federal agency (in this case promulgation of 5 C.F.R. § 551.432(b) by the OPM), the complaining individual must have sustained "injury in fact, economic or otherwise" as a result of the action taken by that agency. *Data Processing Service v. Camp,* 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970).

In the instant case, Plaintiffs do not and did not work "tours of duty" in excess of 24 hours, and therefore the challenged regulation is inapplicable to them. Moreover, Plaintiffs have failed either to allege or demonstrate that any of them has ever had "sleep time" deducted from their earnings.[17]

Based on the foregoing, this Court therefore finds that Plaintiffs lack standing to challenge 5 C.F.R. § 551.432(b). Accordingly, summary judgment is entered for the Defendants and against the Plaintiffs on Plaintiffs' First Claim.

*Overtime and Minimum Wage Claims*

▇ It is undisputed that the FLSA applies to federal employees and has generally since May 1, 1974, and that since January 1, 1975 when § 7(k)[18] became effective,

---

**15.** Clearly, other firefighting plaintiffs have the same work schedule over a 14 day period: 6 days on, 8 days off, a total of 144 hours worked.

**16.** *See, e.g., Beebe v. United States,* 640 F.2d 1283 (Cl.Ct.1981).

**17.** Further, Plaintiffs' argument that they could be subject to the regulation and therefore injured by it because they could be called to work in an emergency (for example) for a period which exceeds 24 hours is rejected by this Court. As stated above, Plaintiffs' unscheduled work does not alter their "tours of duty." Additionally, as stated *infra,* Defendants have demonstrated that in such a situation Plaintiffs would be paid their overtime rate for those hours exceeding the 24 hour "tour of duty."

**18.** 29 U.S.C. § 207(k) provides:

No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection activities or any employee in law enforcement activities (including security personnel in correctional institutions) if—

(1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours (as determined by the Secretary pursuant to section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975; or

has applied to federal firefighters and law enforcement personnel.

In accordance with §§ 6 and 7 of the FLSA, the Plaintiffs, as federal firefighters and law enforcement personnel, are entitled to be compensated at a rate not less than minimum wage and are also entitled to overtime compensation at a rate not less than one and one-half times their regular rate of pay.

As set forth above, a great portion of Plaintiffs' claims concern Defendants' method of computing Plaintiffs' wages. According to the Plaintiffs, Defendants' method is improper and results in certain Plaintiffs being paid subminimum wages and all Plaintiffs being paid overtime wages at a rate less than time and one-half. In order to evaluate Plaintiffs' claims, it is necessary to define some basic terms and examine Defendants' method of computation. These terms, as indicated below, have different statutory sources.

"Basic pay" and "[basic] hourly rate" are set forth in 5 U.S.C. § 5504(b).[19] In conformity with this statute, "basic pay" is the annual salary of the employee and "[basic] hourly rate" is derived by dividing the annual rate of basic pay by 2,080. Both terms correspond to 52 workweeks of 40 hours each.

"Regular rate", an FLSA term, is set forth in 29 U.S.C. § 207(e).[20] By the terms of this statute, "regular rate" includes "all remuneration" received by employee.

Hourly "regular rate" is set forth in F.P.M. Letter 551–5, Attachment 4, which provides that the hourly regular rate is determined by dividing the total remuneration (including "premium pay on an annual basis" for both "regularly scheduled standby duty" [applies to firefighters] or "administratively uncontrollable work" [applies to law enforcement personnel] by the number of hours in the "tours of duty." Attachment 2 further provides that "regular rate" shall not be less than the statutory minimum specified in § 6 of the FLSA, 29 U.S.C. § 206.

"Premium pay on an annual basis" for "regularly scheduled standby duty" is set forth in 5 U.S.C. § 5545(c)(1)[21] and F.P.M. Letter 551–5, Attachment 3, subd. A.2.[22]

(2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or if lower, the number of hours referred to in clause (B) of paragraph (1) bears to 28 days, compensation at a rate not less than one and one-half times the regular rate at which he is employed.

**19.** 5 U.S.C. § 5504(b) provides in pertinent part:
(b) For pay computation purposes affecting an employee, annual rate of basic pay established by or under statute is deemed payment for employment during 52 basic administrative workweeks of 40 hours. When it is necessary for computation of pay under this subsection to convert an annual rate of basic pay to a basic hourly, daily, weekly, or biweekly rate, the following rules govern:
(1) To derive an hourly rate, divide the annual rate by 2,080.

**20.** 29 U.S.C. § 207(e) provides in pertinent part: "As used in this section the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of the employee."

**21.** 5 U.S.C. § 5545(c)(1) provides in pertinent part:
(1) an employee in a position requiring him regularly to remain at, or within the confines of, his station during longer than ordinary periods of duty, a substantial part of which consists of remaining in a standby status rather than performing work, shall receive premium pay for this duty on an annual basis instead of premium pay provided by other provisions of this subchapter, except for irregular, unscheduled overtime duty in excess of his regularly scheduled weekly tour. Premium pay under this paragraph is determined as an appropriate percentage, not in excess of 25 percent, of such part of the rate of basic pay for the position.

**22.** FPM Letter 551–5, Attachment 3, subd. A.2 provides in pertinent part:
2. *Pay for Regularly Scheduled Standby Duty— Title 5*
An employee (such as a firefighter) may be receiving compensation for regularly scheduled overtime work by use of premium pay on an annual basis for regularly scheduled standby duty under section 5545(c)(1) of title 5, United States Code.

"Premimum Pay on an annual basis" for "administratively uncontrollable work" is set forth in 5 U.S.C. § 5545(c)(2)[23] and F.P.M. Letter 551-5, Attachment 3, subd. A.3.[24]

Thus, in addition to their "basic pay", federal firefighters and law enforcement personnel are entitled to "premium pay" which, by statute, is not to exceed 25% of their "basic pay."

In this case, the Plaintiffs receive "premium pay" which is comprised of 25% of their "basic pay." This is in addition to overtime pay and is not intended to be compensation for overtime work, although Plaintiffs have asserted the latter.

As noted above, "regular rate" is computed by dividing the employees' total remuneration ("basic pay" and "premium pay") by the total number of scheduled hours in the "tours of duty"[25] for the work period. In the case of the Plaintiffs, their work period is 14 days. Further, with respect to Plaintiffs who are firefighters the total number of scheduled hours worked during this work period is 144.

This formula for computation of "regular rate" is contained in F.P.M. Letter 551-5, Attachment 2, subd. D.1.[26] Defendants have demonstrated that they utilized this method of computation, and have followed the applicable statutes and regulations. This Court must now decide if this method is appropriate under these circumstances, and if under it, Plaintiffs received no less than minimum wage.

This Court will first review the Defendants' method of computing overtime pay, and then review Plaintiffs' overtime and "regular rate" challenges together.

**23.** 5 U.S.C. § 5545(c)(2) provides in pertinent part:

> (2) an employee in a position in which the hours of duty cannot be controlled administratively, and which requires substantial amounts of irregular, unscheduled, overtime duty with the employee generally being responsible for recognizing, without supervision, circumstances which require him to remain on duty, shall receive premium pay for this duty on an annual basis instead of premium pay provided by other provisions of this subchapter, except for regularly scheduled overtime, night, and Sunday duty, and for holiday duty. Premium pay under this paragraph is determined as an appropriate percentage, not less than 10 percent nor more than 25 percent, of such part of the rate of basic pay for the position.

**24.** F.P.M. Letter 551-5, Attachment 3, subd. A.3 provides in pertinent part:

> 3. *Pay for Administratively Uncontrollable Work—Title 5*
> An employee (such as a criminal investigator) may be receiving compensation for irregular, unscheduled, overtime work by use of premium pay on an annual basis for administratively uncontrollable work under section 5545(c)(2) of title 5, United States Code.

**25.** *See* F.P.M. Letter 551-5, Attachment 3, subd. B.1. In computing "regular rate", only scheduled hours are utilized; unscheduled hours are compensated as overtime work under 5 U.S.C. § 5542(a).

**26.** F.P.M. Letter 551-5, Attachment 2, subd. D. 1 provides:

> 1. *Computation of "Regular Rate"—FLSA*
> An employee's regular rate of pay must first be determined in order to compute his overtime pay entitlement under the FLSA. Section 7(e) of the FLSA requires inclusion in the 'regular rate' of 'all remuneration for employment paid to, or on behalf of, the employee' except for certain specific exclusions. Premium pay on an annual basis for regularly scheduled standby duty (5 U.S.C. 5545(c)(1) and premium pay on an annual basis for administratively uncontrollable work (5 U.S.C. 5545(c)(2)) do *not* qualify as statutory exclusions from the 'regular rate' and therefore, they are included in computing an employee's total remuneration.
> The employee's hourly "regular rate" is then determined by dividing the employee's total remuneration for employment in any work period by the total number of hours in the employee's tour of duty under the FLSA (all hours actually on duty including scheduled and unscheduled periods).

$$\text{Regular Rate} = \frac{\text{Total Remuneration for the Work Period}}{\text{Tour of Duty}}$$

The regular rate of pay at which the employee is employed shall in no event be less than the statutory minimum specified under section 6 of the FLSA. (See attachment 3 to FPM Letter 551-1 for the appropriate minimum wage rates).

By Defendants' method, an employee's overtime pay is computed after the individual's "regular rate" is calculated. F.P.M. Letter 551–5, Attachment 2, subd. D.2 provides that the employee is entitled to overtime compensation at a rate of one-half of the "regular rate" "for each hour the employee's tour of duty exceeds the maximum hours limitation of section 7(k) of the FLSA." [27] This portion of the F.P.M. Letter also explains why law enforcement personnel and firefighters are paid one-half their regular rate for scheduled overtime hours rather than the traditional one and one-half: these employees have already been compensated for all hours worked and therefore the additional one-half times their regular rate for each hour worked over the FLSA maximum results in the employee being paid at a rate of one and one-half for each hour of his scheduled overtime. In the case of firefighters and law enforcement employees, for their 14 day work period, they are compensated for "scheduled overtime" after they have worked 108 and 93 hours, respectively. Additionally, as noted *infra* at n. 25, Plaintiffs are compensated for "unscheduled overtime" at a rate of one and one-half times their "regular rate."

It is clear that Defendants' method of computation for "regular rate" and overtime is correct. Moreover, in their computations, Defendants have demonstrated that they have followed F.P.M. Letter 551–5 which they were required to follow and which, in any event, Plaintiffs do not question. Further, contrary to Plaintiffs'

claims, "basic pay" has no application to these computations since Plaintiffs do not work the traditional 40 hour week.

The Plaintiffs' confusion may exist because under Title 5 and the FLSA, there are different overtime pay rules. However, each set of rules is to be applied separately.

Under Title 5 for a two week work period, employees would be compensated with "[hourly] basic pay" for 80 hours of work. In addition, federal firefighters and law enforcement personnel are compensated for the standby duty which they perform. This "premium pay on an annual basis" is not meant to compensate Plaintiffs for overtime work. Therefore, under Title 5 for a two week period, Plaintiffs receive this "basic pay" (although their compensation is not based on an 80 hour work week) and additional compensation for their overtime duties. For FLSA calculations applicable to the Plaintiffs, it is necessary to add these two figures together to derive Plaintiffs' "total remuneration" for the 14 day work period.

In contrast, under § 7(k) of the FLSA firefighting Plaintiffs work 144 hours during each 14 day work period. As noted above, it is the "total remuneration" for the two week period which is divided by 144 which results in the Plaintiffs' (hourly) "regular rate" of pay. Plaintiffs are paid at the (hourly) "regular rate" for each of the 144 hours worked during their 14 day work period.

Additionally, under § 7(k) the FLSA, Plaintiffs are entitled to overtime pay for

---

**27.** F.P.M. Letter 551–5, Attachment 2, subd. D.2 provides:

2. *Computation of Overtime Pay—FLSA*

Once an employee's hourly 'regular rate' is determined, the employee is then entitled to additional compensation at a rate of one-half times the 'regular rate' for each hour the employee's tour of duty exceeds the maximum hours limitation of section 7(k) of the FLSA.

Additional Compensation = ½ × Regular Rate × Number of Overtime Hours

NOTE: The employee's additional compensation for overtime work is computed at *one-half* times the 'regular rate' and not *one and one-half* times the 'regular rate' for all overtime hours under the FLSA. A simple expla-

nation is that in computing an employee's total remuneration for the work period, the employee has already been compensated at 100 percent for all hours in his tour of duty. Therefore, once the employee's 'regular rate' is computed, the employee is then entitled to additional compensation of 50 percent times his 'regular rate' for those hours in excess of the maximum hours limitation of section 7(k) of the FLSA. This method of computing an employee's overtime entitlement under the FLSA results in the employee being compensated for overtime work at a rate of 'one and one-half times the regular rate at which he is employed.'

each hour worked over 108 or 93 during their 14 day work period at one-half of their regular rate ("scheduled overtime".) Since Plaintiffs have already been compensated their full regular rate for all scheduled hours worked, the additional payment of one-half their regular rate for each hour of "scheduled overtime" results in Plaintiffs' being paid for overtime at a rate of one and one-half times their regular rate.

Further, as previously noted, if Plaintiffs are required to work beyond their schedule "tour of duty" during their two week work period, ("unschedule overtime"), they are paid at the rate of one and one-half times their (hourly) "regular rate."

Clearly, Defendants' method of computing Plaintiffs' "regular rate", "basic rate" and overtime rates are correct and in accordance with the statutory and regulatory framework of Title 5, the FLSA and F.P.M. Letter 551–5. Plaintiffs' contentions in this regard are without merit as Defendants have appropriately calculated Plaintiffs' "regular rate" in order to derive their overtime rate.

Accordingly, Defendants' Motion for Summary Judgment on Plaintiffs' Third and Fourth claims is granted and judgment is entered on these claims in favor of the Defendants and against the Plaintiffs.

Further, because the Third and Fourth claims are without merit and summary judgment on these claims has been granted in favor of the Defendants, Plaintiffs' Fifth and Sixth Claims, which allege that Defendants' "regular rate" and overtime methods of computation violate the Equal Protection clause of the Fifth Amendment to the Constitution, are likewise without merit.

Therefore, with respect to Plaintiffs' Fifth and Sixth Claims, summary judgment is entered in favor of the Defendants and against the Plaintiffs.

We note that Plaintiffs' Second Claim, the minimum wage claim, has some limited merit. Plaintiffs have shown, with respect to GS–3, Step 1 firefighters only, that for certain of the years at issue, they have been paid at an hourly "regular rate" below minimum wage. More particularly, for the years 1978, 1979, 1980 and 1981, GS–3, Step 1 firefighters have been paid hourly regular rates of $2.64, $2.79, $2.99 and $3.27, respectively, all of which are below the FLSA requirements.[28]

Accordingly, with respect to the Plaintiffs' Second Claim, summary judgment is entered in favor of the Plaintiffs and against the Defendants insofar as federal firefighters in the GS–3 Step 1 levels for the years 1978, 1979, 1980 and 1981 are concerned. For all other claims under the Second Claim, summary judgment is entered for the Defendants and against the Plaintiffs, as Plaintiffs have been paid at a rate not less than minimum wage.

*Plaintiffs' Request for a Writ of Mandamus*

As previously noted, in their Seventh Claim, Plaintiffs have requested that this Court issue a writ of mandamus pursuant to 28 U.S.C. § 1361, "compelling Defendants to comply with their statutory duties."

In light of this Opinion, this application is denied. However, this Court would further note that with respect to the Second Claim, the only claim in which Plaintiffs have (partially) prevailed, the award of damages adequately remedies the problem, and a further Order from this Court in the nature of a writ of mandamus is unwarranted.

Accordingly, with respect to Plaintiffs' Seventh Claim, summary judgment is entered in favor of the Defendants and against the Plaintiffs.

*Defendants' Good Faith Defense*

In light of the disposition of these motions for summary judgment, Defendants' argument regarding its good faith defense under 29 U.S.C. § 259 [29] need only be addressed briefly.

---

**28.** Under § 6, of the FLSA, 29 U.S.C. § 206, the minimum wage for these years is as follows: 1978—$2.65; 1979—$2.90; 1980—$3.10; and 1981—$3.35.

**29.** 29 U.S.C. § 259 provides in pertinent part:

(a) In any action or proceeding based on any act or omission on or after May 14, 1947,

Without discussing the availability of this defense to the government in general, this Court notes that it is unavailable to the Defendants in this case because it is inapplicable. Clearly, Defendants correctly followed the applicable regulations and statutes. However, the Plaintiffs prevailed with respect to a limited part of their Second Claim, but this was not due to the manner in which Defendants followed the various regulations. As noted above, Defendants correctly followed the applicable regulations. However, it is the application of the GS-3 Step 1 basic pay for the aforementioned years to the applicable equations which do not result in minimum wages. Therefore, this defense is unavailable to the Defendants, because it is not the reliance on these regulations which created liability, but rather liability is bottomed upon the amount of the salary which, when incorporated into the required equations, did not result in minimum wage for GS-3, Step 1 firefighters in the years noted above.

## MOTION TO DISMISS ALL GOVERNMENT OFFICIALS NAMED IN THEIR OFFICIAL CAPACITIES

■ Defendants have also moved to dismiss all Defendants except the United States, claiming that only the United States is a proper party, as "the only waiver of sovereign immunity to suit under which an action may be brought against the United States under the FLSA is the Tucker Act" and that the Tucker Act does not permit suit against the United States through its individual officials in this context. Alternately Defendants assert that at least this action should be dismissed as against the Defendants whose agencies do not employ Plaintiffs.[30]

Plaintiffs also contend that because they are seeking injunctive relief, *i.e.*, compliance with the FLSA, that it is appropriate for the agency heads to be parties "in order to fully effectuate such relief."

An action is deemed to be against the United States if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration." *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963), quoting *Land v. Dollar*, 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209 (1947). Similarly, a suit is against the government "if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" *Id.* at 620, 83 S.Ct. at 1006, quoting *Larson v. Domestic & Foreign Corp.*, 337 U.S. 682, 683, 704, 69 S.Ct. 1457, 1468, 93 L.Ed. 1628 (1949) and *Ex Parte New York*, 256 U.S. 490, 502, 41 S.Ct. 588, 591, 65 L.Ed. 1057 (1921).[31]

The *Dugan* Court articulated two exceptions set forth above:

(1) action by officers beyond their statutory powers and (2) even though within the scope of their authority, the powers themselves or the manner in which they are exercised are constitutionally void. *Id.* at 621–622, 83 S.Ct. at 1006–1007, quoting *Malone v. Bowdoin*, 369 U.S. 643, 647, 82 S.Ct. 980, 983, 8 L.Ed.2d 168 (1962).

However, the exceptions apply to the permissibility of suit against an officer individually, and not in the capacity of an official of the United States. Clearly these are inapplicable herein as, *inter alia*, the officer Defendants have not been sued in their individual capacity.

Therefore, in the instant situation, although the named defendants are different

no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended, ... if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval or interpretation ... such a defense, if estab-

lished, shall be a bar to the action or proceeding.

**30.** Plaintiffs are employed solely by the Department of the Army, Navy, Air Force and Justice; and the Veterans Administration and the General Services Administration.

**31.** As set forth *supra*, this Court has already stated that the Tucker Act does not confer jurisdiction.

agency and department heads in their official capacities as well as the United States, this suit is nonetheless one against the United States. Moreover, although this is so, this fact alone does not justify dismissing all Defendants from this action other than the United States.

Contrary to Defendants' contentions, this Court does not find that Plaintiffs are limited to the United States as the sole defendant in this case. 29 U.S.C. § 216(b) provides, *inter alia*, that "[a]n action to recover the liability prescribed in either of the preceding sentences may be maintained against *any employer* (*including a public agency*)." (Emphasis added).

Defendants have also moved to dismiss all agencies sued herein which do not employ any of the Plaintiffs. Although this lawsuit was commenced as a class action, Plaintiffs have since affirmatively sought not to proceed as a class, but rather as individuals. Therefore, at the current time, the officials of those agencies which do not employ any Plaintiffs have no possible connection with the instant lawsuit as they are not Plaintiffs' "employers", and their Complaint does not state a cognizable cause of action against these Defendants.

For the reasons set forth above, Defendants' Motion to Dismiss all government officials is granted in part and denied in part. Specifically, only those Defendants whose agencies do not employ any Plaintiffs are dismissed from this action.

## PLAINTIFFS' MOTION FOR THE IMPOSITION OF SANCTIONS AND DEFENDANTS' MOTION FOR A PROTECTIVE ORDER

Plaintiffs have moved for the imposition of sanctions due to their contention that certain Defendants have not submitted responses to Plaintiffs' interrogatories, requests for admissions and requests for the production of documents. These Defendants are the heads of the following departments: Justice,[32] Treasury, Interior; Health, Education and Welfare (Health and Human Services); Transportation and Commerce.

Defendants have also moved for a protective order with respect to discovery from the Defendants whose agencies do not employ any Plaintiffs.

Because this Court has dismissed the Defendants whose agencies do not employ any Plaintiffs, both motions are denied as moot.

An appropriate Order shall issue.

### ORDER

And now, in conformity with the foregoing Opinion, it is hereby ORDERED that Plaintiffs' and Defendants' cross-motions for summary judgment are GRANTED in part and DENIED in part. Specifically, Defendants' Motion for Summary Judgment is GRANTED with respect to Plaintiffs' First, Third, Fourth, Fifth, Sixth and Seventh Claims and with respect to Plaintiffs' second claim, except to the extent that this claim concerns GS–3, Step 1 firefighters for the years 1978, 1979, 1980 and 1981.

Accordingly, Summary Judgment is ENTERED in favor of the Defendants and against the Plaintiffs on the First, Third, Fourth, Fifth, Sixth and Seventh Claims and the Second Claim exclusive of claims by GS–3 Step 1 firefighters for the years 1978–1981.

With respect to the part of the Second Claim by GS–3, Step 1 firefighters for the years 1978–1981, Summary Judgment is ENTERED in favor of these Plaintiffs and against the Defendants. In light of this limited liability finding on the Second Claim, counsel are directed to set up a meeting in order to determine the amount of damages due each Plaintiff in this group. Counsel are further directed to inform this Court of their progress, in writing, by August 15, 1984. It is anticipated that this limited issue may be resolved amicably and without the further intervention of this Court.

---

**32.** The Department of Justice is the only department set forth above which employs any Plaintiffs. However, it had previously submitted responses to Plaintiffs various requests. For this reason, this portion of Plaintiffs' motion is denied.

It is further ORDERED that Defendants' Motion to Dismiss all government officials named in their official capacities is GRANTED in part and DENIED in part. Specifically, this action is DISMISSED against all government officials, whose agencies do not employ plaintiffs.

Accordingly, the caption shall be amended to read:

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL ZUMERLING, TERRY L. LEVAN, PATON P. HODGE, JAMES J. McGINLEY, SAMUEL CULLUM, JAMES R. CYR, ALLEN CYR, PAUL KAYLOR, LARRY RETTIG, NORMAN WHITEHURST, HERBERT D'ALBINI, GENERAL GRANVILLE, JR., EDWARD R. TOMS, LEONARD SORRENTINO,

Plaintiffs

vs.

JOHN O. MARSH, JR., Secretary Department of the Army of the United States of America, JOHN F. LEHMAN, JR., Secretary of Department of the Navy of the United States of America, VERNE ORR, Secretary Department of the Air Force of the United States of America, DONALD L. CUSTIS, M.D., Acting Administrator Veterans Administration of the United States of America, UNITED STATES OF AMERICA,

Defendants

Civil Action No. 81-963

It is further ORDERED that Plaintiffs' Motion for the Imposition of Sanctions and Defendants' Motion for Protective Order is DENIED as moot.