Eschal E. BEAN et al.

v.

UNITED STATES.

Ernest N. BARTON et al.

v.

UNITED STATES.

Arthur H. BROWN et al.

v.

UNITED STATES.

Forrest L. ALEXANDER et al.

v.

UNITED STATES.

Thomas L. BONDS et al.

v.

UNITED STATES.

Glenn G. ANGLEY et al.

v.

UNITED STATES.

Fred C. BUTELL et al.

v.

UNITED STATES.

David D. ACREE et al.

v.

UNITED STATES.

Nos. 503-56, 61-57, 147-57, 152-57, 154-57, 369-57, 371-57.

United States Court of Claims.

July 13, 1959.

Charles R. Nesbitt, Oklahoma City, Okl., for plaintiffs. Robert N. Naifeh, Norman, Okl., and William G. Smith, Oklahoma City, Okl., were on the briefs.

Thomas J. Lydon, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant. Kendall M. Barnes, Washington, D. C., was on the briefs.

WHITAKER, Judge.

The plaintiffs in each of these cases were firefighters at various Army posts in the United States. They sue for additional compensation to which they say they are entitled for the period of six years prior to the filing of their petitions. Up until November 1, 1954, they have been paid under the so-called "two-thirds rule" promulgated by the Civil Service Commission under the Federal Employees Pay Act of 1945 (59 Stat. 295), 5 U.S.C.A. § 901 et seq. After November 1954 they have been paid premium pay under the provisions of the Act of September 1, 1954 (68 Stat. 1109), which amended the Federal Employees Pay Act of 1945 by adding thereto section 401.

Up to November 1, 1954, plaintiffs' tour of duty was 60 hours a week, consisting of two 24-hour shifts and one 12-hour shift, during which they were required to remain at their posts of duty. They have been compensated for 40 hours a week. They have not been compensated for the remaining 20 hours because this time is presumed to have been spent in eating and sleeping. They have no right to additional compensation for this period under the decisions of this court in Gaetke v. United States, 145 F.Supp. 913, 136 Ct.Cl. 756, and Sawyer v. United States, 138 Ct.Cl. 152, certiorari denied 355 U.S. 868, 78 S.Ct. 117, 2 L.Ed.2d 74, and the other cases therein relied upon.

Plaintiffs' contention that their cases come within the fact situations dealt with in Farley v. United States, 127 F.Supp. 562, 131 Ct.Cl. 776, and England v. United States, 137 F.Supp. 757, 133 Ct.Cl. 768, is not well taken. The amount of labor performed by them within this 20 hours was inconsequential, as shown by the affidavits filed. Merlin M. Armstrong v. United States, —— Ct.Cl. —— No. 145–56, decided January 14, 1959.

Their right to additional compensation after November 1, 1954, is governed, as stated above,, by the Act of September 1, 1954, supra, at page 1111. That Act added to the Federal Employees Pay Act of 1945, section 401, which is set out, in part, in a note below.[1] That section, in

---

1. Section 401 reads, in part:
   "The head of any department, independent establishment, or agency, * * * may, with the approval of the Civil Service Commission, provide that—'(1) any officer or employee in a position requiring him regularly to remain at, or within the confines of, his station during longer than ordinary periods of duty, a substantial part of which consists of remaining in a standby status rather than performing work, shall receive premium compensation for such duty on an annual basis in lieu of premium compensation provided by any other provisions of this Act.

   Premium compensation under this paragraph shall be determined as an appropriate percentage (not in excess of 25 per centum) of such part of the rate of basic compensation for any such position as does not exceed the minimum scheduled rate of basic compensation provided for grade GS–9 in the Classification Act of 1949, as amended, by taking into consideration the number of hours of actual work required in such position, the number of hours required in a standby status at or within the confines of the station, the extent to which the duties of such position are made

subsection (a), provides for premium compensation for time spent in a standby status, based upon a certain percentage of their basic compensation, to be determined by the Civil Service Commission. In making this determination the Civil Service Commission was directed to take into consideration "the number of hours of actual work required in such position, the number of hours required in a standby status at or within the confines of the station, the extent to which the duties of such position are made more onerous by night or holiday work, or by being extended over periods of more than forty hours a week, and any other relative factors; * * *."

Plaintiffs have been paid such premium compensation. They claim, however, that they come within the provisions of subsection (b) of section 401, which reads:

"Nothing contained in this section shall be construed to decrease the existing aggregate rate of compensation of any present employee, but when the position of such employee becomes vacant any subsequent appointee thereto shall receive premium compensation provided for such position in accordance with this section."

■ The compensation paid plaintiffs since November 1, 1954, is not less than their compensation prior to the passage of the Act of 1954, supra. However, whereas plaintiffs worked a 60-hour week prior to November 1, 1954, they worked a 72-hour week thereafter, and plaintiffs say they are entitled to receive whatever compensation they would have been entitled to under the Federal Employees Pay Act of 1945, before its amendment, based upon the same tour of duty as was established under the amendment of September 1, 1954. They say Congress intended to compensate them after the

passage of the 1954 Act according to its terms only if they would get more under this Act than under the former Act.

This was not the intention of Congress. Its intention was to simplify the computation of the pay of employees required to remain in a standby status and to work overtime at night and on holidays. For all such work a certain percentage of their basic compensation was to be paid. No longer would it be necessary to keep an account of overtime and holiday and nighttime work; no longer would there be uncertainty about their right to compensation for time spent in a standby status. This was the purpose of the Act.

■ The only purpose of subsection (b) was to prevent the reduction in the actual pay an employee had received prior to the passage of the Act. It was not intended by this section to increase the compensation of these employees, unless they were entitled to it by virtue of the premium compensation provision of the 1954 Act. This plainly appears from the express words of subsection (b), which reads:

"Nothing contained in this section shall be construed to decrease *the existing aggregate rate of compensation of any present employee* * *." [Italics supplied.]

And then the section says that when the employee drawing compensation under the prior Act leaves his employment, the "subsequent appointee thereto shall receive premium compensation provided for such position in accordance with this section." It is, therefore, evident that it was not intended to increase the compensation fixed by the 1954 Act, but only to avoid decreasing the compensation received by an employee prior to the passage of the Act.

more onerous by night or holiday work, or by being extended over periods of more than forty hours a week, and any other relative factors; * * *.'
   *    *    *    *    *
"(b) Nothing contained in this section shall be construed to decrease the exist-

ing aggregate rate of compensation of any present employee, but when the position of such employee becomes vacant any subsequent appointee thereto shall receive premium compensation provided for such position in accordance with this section."

The hearings on a Bill introduced in the 82d Congress, which was similar to the 1954 Act, confirms that it was not the intention of Congress to increase the pay of firefighters. Indeed, the proponents of the Bill seemed to think that their compensation was too high under existing law. (Hearings before a subcommittee of the Committee on Post Office and Civil Service on S. 354, 82d Cong., 1st Sess., p. 29; Hearings before the Committee on Post Office and Civil Service of the Senate on S. 2665 [H.R. 2263 (the 1954 Act) passed in lieu thereof], 83d Cong., 1st Sess. (1954), pp. 64, 95.)

Plaintiffs are receiving more pay under the 1954 Act than they had received under the former Act, and, hence, can get no relief under subsection (b) of section 401.

It is true they are on duty more hours per week than they were prior to the passage of the 1954 Act, but the head of the department was given authority under section 208(a) to fix the tour of duty, and the report of the Civil Service Commission shows that an increase in the tour of duty from 60 to 72 hours was in contemplation when the Act was passed. See page 29 of Hearings referred to supra.

It should also be observed that the percentage of premium compensation was greater for a 72-hour tour of duty than for a 60-hour tour. It ranged from 5 to 10 percent for a 60-hour tour, and from 15 to 20 percent for a 72-hour tour.

The basic fact, however, is that the only purpose of 401(b) was to prevent the reduction of the "existing" compensation of any present employee. That has not been done, and plaintiffs are not entitled to recover.

Plaintiffs' motions for summary judgment are denied. Defendant's like motion is granted, and plaintiffs' petitions are dismissed.

It is so ordered.

JONES, Chief Judge, and LITTLETON, (Retired); LARAMORE and MADDEN, Judges, concur.