Richard A. LaFORTE and Rickey A. Rogers, Plaintiffs–Appellants,

v.

Constance HORNER, Director, U.S. Office of Personnel Management and the United States of America, Defendants–Appellees.

No. 87–1138.

United States Court of Appeals, Federal Circuit.

Nov. 17, 1987.

Ira N. Leckner, Connerton & Bernstein, Washington, D.C., argued for plaintiffs-appellants. With him on the brief was Linda Lipsett.

Robert A. Reutershan, Asst. Director, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for defendants-appellees. With him on the brief were Richard K. Willard, Asst. Atty. Gen. and David M. Cohen, Director.

Before MARKEY, Chief Judge, BENNETT, Senior Circuit Judge, and NEWMAN, Circuit Judge.

PER CURIAM.

## DECISION

Appellants, two federal firefighters, appeal from the judgment of the United States District Court for the District of Maryland (Black, J.), granting appellee's motion for summary judgment. Correspondingly denying appellants' motion for summary judgment, the district court ruled that the formula in Federal Personnel Manual (FPM) Letter 551–5 used by the Office of Personnel Management (OPM) to calculate the overtime pay entitlements for appellant firefighters under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219 (1982 & Supp. III 1985), was valid and in conformity with the requirements of Title 5, the FLSA, and Department of Labor regulations. We affirm.

## BACKGROUND

At the time that this action was filed, appellants Richard A. LaForte and Rickey A. Rogers were civilian federal firefighters (grade GS–5, step 1) employed at Andrews Air Force Base in Maryland. Federal firefighters do not work a 40–hour workweek, but instead are employed for 144 hours per 14–day biweekly work period. The firefighters are on duty for six 24–hour shifts during each 14–day work period. Each 24–hour shift consists of 8 hours of work, and 16 hours of standby time during which the firefighters are confined to their work stations and subject to immediate duty in the event of a fire or other emergency.

Congress recognized that the work schedules of firefighters differ from those of typical general schedule (GS) government employees and provided for those differences in the statutes governing the firefighters' pay. The firefighters receive basic general schedule pay, see 5 U.S.C. § 5332, and in addition, in accordance with 5 U.S.C. § 5545(c)(1) (1982), the firefighters receive "premium pay" of up to 25 percent of their basic GS pay in recognition of the substantial portion of their regularly scheduled duty spent in a standby status. Additionally, section 7(a) of the FLSA provides that federal employees are not to be employed for a longer workweek than 40 hours unless they receive compensation at a rate not less than one and one-half times the regular rate at which they are employed. However, federal firefighters initially were excepted from the FLSA provi-

sions when the federal government became subject to the FLSA in 1974.

An amendment to the FLSA, taking effect on January 1, 1975, and codified as 29 U.S.C. § 207(k), provided an exception to section 207(a) for public agency employees engaged in fire protection services. The current version of 29 U.S.C. § 207(k) reads, in pertinent part, that:

No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection activities ... if—

(1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours ... in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975; or

(2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or if lower, the number of hours referred to in clause (B) of paragraph (1)) bears to 28 days,

compensation at a rate not less than one and one-half times the regular rate at which he is employed.

Thus, in addition to their basic pay and premium pay, federal firefighters also are entitled to receive additional compensation under the FLSA, the amount of which is calculated in accordance with the formula outlined in FPM Letter 551–5. FPM Letter 551–5 was promulgated by the Civil Service Commission, the predecessor agency to OPM, within weeks of the enactment of section 207(k) and contained detailed guide-lines for computing FLSA pay for firefighters in accordance with that section. However, not satisfied with the manner in which their FLSA overtime compensation was calculated, the appellants filed suit in the district court, challenging the validity of the FPM formula and seeking to recover any compensation improperly withheld, together with interest, liquidated damages, and attorneys' fees as provided in 29 U.S.C. § 216(b).

The appellants' suit is not the first court challenge to the method by which federal firefighters are compensated. The leading case is *Zumerling v. Devine*, 769 F.2d 745 (Fed.Cir.1985), a case involving a challenge to the computation method of firefighters' FLSA pay in which this court decided several issues that provide a backdrop for the present case. We will not repeat the entire analysis contained in the *Zumerling* opinion; nevertheless, an understanding of the issues presented and decided in that case is crucial to the resolution of the present case.

Under section 7 of the FLSA, federal firefighters are entitled to be compensated at a rate not less than one and one-half times their "regular rate" of pay, *see* 29 U.S.C. § 207(e), for a portion of their 144–hour, 2–week work period. The plaintiffs in *Zumerling* challenged the method in which the regular rate was calculated under FPM Letter 551–5 as used by OPM.[1] The court in *Zumerling* observed that OPM had the authority to interpret the FLSA statute and concluded that FPM Letter 551–5 was a valid exercise of that authority. 769 F.2d at 750 (citing *Beebe v. United States*, 640 F.2d 1283, 226 Ct.Cl. 308 (1981)). Citing with approval the discussion in *Alexander v. United States*, 1 Cl.Ct. 653 (1983), the court concluded that OPM's administration of the FLSA overtime provisions was both reasonable and consistent with the statute, the regulations promulgated by the Secretary of Labor,

---

1. The district court in the *Zumerling* case noted that "[p]laintiffs do not challenge F.P.M. Letter 551–5." *Zumerling v. Marsh*, 591 F.Supp. 537, 540 n. 4 (W.D.Pa.1984). Appellants here rely on that footnote as grounds for this panel to review FPM Letter 551–5 on a clean slate. However, it is clear from an examination of the prior opinion of this court in the appeal from that decision in that case that FPM Letter 551–5 was indeed "squarely at issue" and addressed by this court. 769 F.2d at 747.

and the intent of Congress. 769 F.2d at 749–52.

The court in *Zumerling* expressly decided that the "regular rate" of pay for firefighters is equal to the employees' total remuneration (basic pay plus premium pay) divided by the total number of hours worked in a work period (144 hours). *Id.* at 749–52. In reaching this conclusion, the court determined that the premium pay received by the firefighters was not excluded under 29 U.S.C. § 207(e) from being included in the regular rate calculation:

> The firefighters' premium pay is not received in return for any particular hours of work. Rather it is a function of the government's recognition that firefighters don't work the typical work schedule of the federal system. The annual basis payment, therefore, is not an overtime payment, but a means of generally compensating the employees given the confines of the federal pay schedule. As such, it is part of the wage typically paid for each hour of work and must be included [in the calculation of "regular rate"].

*Id.* at 751. Therefore, the court rejected arguments that the "total remuneration" should not include premium pay received pursuant to 5 U.S.C. § 5545. The court also rejected the argument that, in order to determine the "regular rate," the total remuneration should not be divided by the total number of hours for which it is received, 144 hours in a 2–week pay period.[2] Finally, the court concluded that the formula reflected in the FPM Letter was both proper and consistent with the statute and regulations in allowing additional compensation of one-half the regular rate rather than one and one-half times the rate because the employee's total remuneration calculation compensates the employee at 100 percent for all the hours in his tour of duty and the additional one-half thereby allows the employee to receive one and

one-half times the regular rate at which he or she is employed. 769 F.2d at 752–53.

In granting the government's motion for summary judgment in the present case, the district court ruled that issues in *Zumerling* were identical to those presented by the case before it, that the result reached there was correct, and that, in any event, it was bound by that decision since any appeal in the present case would come to this court. Not surprisingly, in appealing the district court's decision in this court, the appellants argue that *Zumerling* did not decide issues identical to the present case and, to the extent that it did, it was wrongly decided. However, to the extent that the issues in the present case are identical to those decided in *Zumerling*, this panel is bound by that decision as only the court sitting in banc can overrule prior decisions of this court. *Capital Electric Co. v. United States*, 729 F.2d 743, 746 (Fed.Cir. 1984). Thus, we must identify and address the issues raised in this appeal left unanswered by the court in *Zumerling* or alternatively conclude, as did the district court, that the issues presented are identical and that we are bound by that decision.

## OPINION

Having seen a series of challenges to the method in which the firefighters' regular rate is calculated under FPM Letter 551–5 rejected by the decisions in *Zumerling* and *Wheeler*, the appellants here do not challenge the regular rate calculation but now choose to attack the adequacy of their pay calculation from another direction by challenging what the OPM can properly use as an offset against the one and one-half times regular rate amount that constitutes their minimum compensation entitlement under 29 U.S.C. § 207(k). The appellants provide several alternative grounds in support of their position which distills into a single proposition. The appellants argue, in short, that they cannot be deemed to receive their regular rate of pay for each of

---

**2.** Specifically, the plaintiffs in *Zumerling* had proposed that the regular rate be calculated as the employees' GS basic pay for the 2–week work period divided by 80 hours or, alternatively, as the employees' total remuneration (basic pay plus premium pay) divided by the statutory average tour of duty (the statutory nonovertime hours) as calculated under 29 U.S.C. § 207(k). *See also Wheeler v. United States,* 9 Cl.Ct. 579 (1986).

the 144 hours that they are on duty because basic pay is limited by 5 U.S.C. § 5504(b) to 80 hours per week.

Thus, while conceding that *Zumerling* held that premium pay is earned in every hour on duty, appellants contend that the basic GS pay of a federal firefighter can only be deemed payment for 80 hours of work in a 2–week work period and therefore cannot be considered either as payment for any of the 38 hours for which they are to be compensated under 29 U.S.C. § 207(k) or as an offset against the government's liability to pay appellants one and one-half times their regular rate for those hours.[3] Thus, appellants argue that they should be deemed to receive both basic pay and premium pay for only the first 80 hours of each 2–week work period and to receive only premium pay for the last 64 hours, including the 38 hours for which they are to be compensated in accordance with 29 U.S.C. § 207(k). Since they are entitled to one and one-half times their regular rate for each of the last 38 hours worked in each 144–hour work period, appellants contend that their pay (per hour) for those hours should equal the difference between one and one-half times their regular rate and their "hourly premium pay" instead of one-half times their regular rate as instructed by FPM Letter 551–5.[4]

Appellants base their argument on the language of 5 U.S.C. § 5504(b) which stated, at the time relevant to this case:

For pay computation purposes affecting an employee, the annual rate of basic pay established by or under statute is deemed payment for employment during 52 administrative workweeks of 40 hours. When it is necessary for computation of pay under this subsection to convert an annual rate of basic pay to a basic hourly ... rate, the following rules govern:

(1) To derive an hourly rate, divide the annual rate by 2,080.[5]

They also base their argument on two responses made by the government in the course of this litigation to requests for admissions. In response to the first request, the government responded "admit" to the query that "for pay computation purposes, non-exempt Federal Fire Fighters are deemed to receive payment of the annual rate of GS basic pay for employment during 52 basic administrative workweeks of 40 hours." To the second request, the government also answered "admit" to the query that "for pay computation purposes, non-exempt Federal Fire Fighters are deemed to receive no payment of their annual rate of GS basic pay for employment in excess of 40 hours during any of the 52 basic administrative workweeks." Appellants argue that these admissions confirm the plain meaning of section 5504(b) and should be deemed admissions against interest under Fed.R.Civ.P. 36(b).

3. Under 29 U.S.C. § 207(k), the appellants in this case were apparently entitled to such compensation after 106 hours in their 144–hour, 2–week work shift. In *Zumerling*, the firefighters were entitled to be compensated at one and one-half times their regular rate after 108 hours of duty. 769 F.2d at 747. *See also Lanehart v. Horner*, 818 F.2d 1574, 1576 n. 4 (Fed.Cir.1987).

4. The appellants' arguments necessarily require that a federal firefighter such as one of the appellants be deemed to receive his overall pay during his regularly scheduled 144–hour work period in the following manner. In each of the first 80 hours, he would receive 1/80th of his basic GS pay for the 2–week period and 1/144th of his premium pay for the 2–week period. For each of the next 26 hours, he would only receive 1/144th of his premium pay. Finally, for the last 38 hours, he would be deemed to re-

ceive 1/144th of his premium pay and sufficient additional pay to bring the total compensation for each of those 38 hours to equal his regular rate of pay times one and one-half. Thus, since the appellants have already received one-half their regular rate of pay for each of the last 38 hours in the 2–week work period, their proposed calculation would mean that they have been underpaid for each of the last 38 hours of each 2–week work period by an amount equal to the difference between their regular rate of pay and 1/144th of their premium pay for the 2–week period.

5. In 1986, among other changes, the entire first sentence quoted in the text was deleted from the statute language. *See* Consolidated Omnibus Budget Reconciliation Act of 1985, Pub.L. No. 99–272, § 15203, 100 Stat. 82, 334 (1986) (codified at 5 U.S.C. § 5504(b) (Supp. IV 1986)).

Addressing the appellants' last contention first, we note that requests for admissions are designed to secure the just, speedy and inexpensive determination of actions by avoiding the time, trouble and expense required to prove undisputed facts which should be admitted. Fed.R.Civ.P. 36(b). The government argues that its admissions were intended merely to admit that section 5504(b) "says what it says." Since appellants' argument is based on "the plain language" of section 5504(b), it could be presumed that they could read what section 5504(b) says without the government's redundant assistance. Nevertheless, we do not find the government's admissions to be determinative of the meaning of 5 U.S.C. § 5504(b) intended by Congress. That question is a legal issue which must be determined, if necessary, by the courts, and one which the appellants have addressed comprehensively and exhaustively in their briefs. Furthermore, as the government's admissions do simply parrot the language of the statute, the true import and meaning of the government's admissions depend upon the proper interpretation of the statute. We do not believe that the appellants have been prejudiced in advancing their arguments without reliance on the government's admissions. *See Gutting v. Falstaff Brewing Corp.,* 710 F.2d 1309, 1314 (8th Cir.1983); *see also Hill v. United States,* 571 F.2d 1098, 1103 n. 9 (9th Cir.1978).

As noted above, the court in *Zumerling* stated that "employees receive their regular rate of pay for each of the 144 hours they work." 769 F.2d at 752. Thus, the government argues that the *Zumerling* opinion rejected the basic premise of the appellants' case—that they do not receive their regular rate of pay for each of the 144 hours in their 2–week work period— and therefore should control this case. However, appellants argue that the court did not expressly determine whether 5 U.S. C. § 5504(b) had any relevance, in the manner urged here by appellants, to the allocation of the appellants' pay to the various hours worked. Contrary to the government's contentions, an awareness of section 5504(b), as indicated by citation to it by both the district court and this court in their respective *Zumerling* opinions, does not necessarily without more show an implicit consideration and rejection by the courts of the specific interpretation urged here.[6]

Nevertheless, having examined the appellants' contentions carefully, we are not persuaded that their reading of section 5504(b) properly reflects the intent of Congress with respect to those federal employees engaged in fire protection services. Nor do appellants' arguments persuade us of the need to alter the result reached in *Zumerling.* It is axiomatic that "a clear and unambiguous statute speaks for itself." *Selman v. United States,* 498 F.2d 1354, 1356, 204 Ct.Cl. 675 (1974). *See also Horner v. Jeffrey,* 823 F.2d 1521, 1525 (Fed.Cir.1987). However, it is also true that "even where a statute is clear on a purely linguistic level, interpretation may be necessary if that interpretation does not do justice to the realities of the situation." *Texas State Commission for the Blind v. United States,* 796 F.2d 400, 406 (Fed.Cir. 1986), *cert. denied,* — U.S. ——, 107 S.Ct. 874, 93 L.Ed.2d 828 (1987); *see also Church of the Holy Trinity v. United States,* 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892). The realities of the situation before us are that Congress has recognized that firefighters are not situated the same as other general schedule federal workers and that firefighters do not work standard 40–hour workweeks. As a result, the compensation scheme applicable to firefighters as devised and intended by Congress differs significantly from that of the standard GS federal employee. *See Wheeler,* 9 Cl.Ct. at 581.

Here, FPM Letter 551–5 was issued by the Civil Service Commission within 2 weeks of the effective date of the amend-

---

**6.** On the other hand, we note that the Claims Court in *Wheeler* apparently was not struck by the "plain language" of section 5504(b) when rejecting an assertion based on section 5504(b) that calculation of the regular rate should be based on 80 hours, rather than 144 hours. 9 Cl.Ct. at 583–84 (relying on *Zumerling* ).

ment to the FLSA which became 29 U.S.C. § 207(k) and is a comprehensive document covering all aspects of the pay entitlements of federal employees engaged in firefighting and law enforcement activities under the FLSA and Title 5. *See United States v. Clark,* 454 U.S. 555, 565, 102 S.Ct. 805, 811–12, 70 L.Ed.2d 768 (1982) ("construction of a statute by those charged with its administration is entitled to great deference, particularly when that interpretation has been followed consistently over a long period of time"). As recognized in *Zumerling,* OPM had "the power to interpret the FLSA statute and to set forth the guidelines and policy of the agency" and the court concluded that FPM Letter 551–5 was a valid exercise of the authority delegated to it by Congress. 769 F.2d at 750. As stated by this court recently in *Slugocki v. United States,* 816 F.2d 1572, 1578 (Fed.Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 486, 98 L.Ed.2d 484 (1987):

> This court [in *Zumerling* ] held that "OPM's administration of the FLSA overtime provisions [was] both reasonable and consistent with the statute, the regulations promulgated by the Secretary of Labor, and the intent of Congress." ... Moreover, one of our predecessor courts, the Court of Claims, held in *Beebe v. United States,* 640 F.2d 1283, 226 Ct.Cl. 308 (1981), that FPM Letter 551–5 was a proper exercise of authority delegated to OPM and that it was proper for an agency to rely on it in implementing the FLSA provisions. *Zumerling,* 769 F.2d at 750. We are bound by the *Zumerling* and *Beebe* decisions....

In keeping with the Supreme Court's instructions, this court has consistently stressed that its review of an agency regulation is restricted in that "[t]he long-standing interpretation placed on a statute by the agency charged with its administration should be followed unless there are compelling reasons that it is wrong." *Money v. Office of Personnel Management,* 811 F.2d 1474, 1477 (Fed.Cir.1987) (citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984); *see also*

*Minnesota Power & Light Co. v. United States,* 782 F.2d 167, 170 (Fed.Cir.1986). As this court stated in *Consumer Products Division, SCM Corp. v. Silver Reed America, Inc.,* 753 F.2d 1033, 1039 (Fed.Cir. 1985):

> [I]t is a cardinal principle that the Secretary's interpretation of the statute need not be the *only* reasonable interpretation or the one which the court views as the most reasonable. *See, e.g., Fulman v. United States,* 434 U.S. 528, 534–36 [98 S.Ct. 841, 845–46, 55 L.Ed.2d 1] (1978) (regulation which had a "reasonable basis" in the statutory history upheld, even though taxpayer's challenge had "logical force"). *See also United States v. Correll,* 389 U.S. 299, 307 [88 S.Ct. 445, 450, 19 L.Ed.2d 537] (1967) ("[I]f found to 'implement the Congressional mandate in some reasonable manner,' [the regulation] must be upheld.").

(Emphasis and bracketed material in original.)

In the case before us, the computation formula proposed by appellants appears to be confusing, to say the least, and perhaps unworkable. Even if it was deemed logical or reasonable in its own right, the issue before us is not the reasonableness of the appellants' method, but whether the method employed by OPM to calculate the appellants' pay is reasonable and in accordance with the statute. We believe that the interpretation given by OPM to the relevant statutes, as reflected in FPM Letter 551–5, is entirely reasonable. Furthermore, we believe that the deference to be paid to a consistent agency interpretation of a statute that it is charged with interpreting is even more compelling when that interpretation has been upheld several times by the reviewing court. While appellants' argument poses a challenge to FPM Letter 551–5 in a slightly different light from the previous challenges, acceptance of its rigid adherence to the printed statute without taking into consideration Congress's overall compensation scheme for federal firefighters would necessarily mean that the challenges previously considered were at least in part incorrectly rejected by this

court. We do not agree with such a result, even if we were empowered to reach it.

It is clear that appellants could not advance their current argument based on the language of section 5504(b) as it now reads because, as noted above, the Consolidated Omnibus Budget Reconciliation Act of 1985 deleted the sentence from section 5504(b) relied on by appellants. We do not believe that Congress intended that amendment to make a significant and substantive change to the pay computation method of federal firefighters. The section in the Act enacting the amendment to section 5504(b) was entitled "Computation of Hourly Rates of Pay," which appears to confirm that section 5504(b) was never intended to do anything more than provide a method to enable employees receiving annual pay to calculate a corresponding hourly, daily, or weekly rate. In fact, the lack of any specific legislative history accompanying the 1986 amendments to section 5504(b) indicates that Congress was unaware of any arguable effect the amendments might have on firefighters' pay and is an even better indication that Congress did not amend section 5504(b) with the precise issue of the firefighters' FLSA pay in mind. This confirms our result since where "Congress has not directly addressed the precise question at issue," the question for the reviewing court is only whether the interpreting agency's answer "is based on a permissible construction of the statute." *Chevron U.S.A.*, 467 U.S. at 843, 104 S.Ct. at 2782.

We believe that the OPM's interpretation is permissible and reasonable in light of the statutes. We find the appellants' proposed pay computation method to be just one more attempt by federal firefighters to gain a pay windfall through creative mathematics rather than from the intentions of Congress. Therefore, we conclude,

as did the district court in this case, that 5 U.S.C. § 5504(b) is "simply not relevant to a determination of overtime wages" for federal firefighters. The judgment of the district court is affirmed.

AFFIRMED.

BENNETT, Senior Circuit Judge, dissenting.

I respectfully dissent. I do so with firm conviction, but great reluctance as my review of the present case leads me to disagree not only with the conclusions of the present majority, but with certain aspects of the result previously reached by this court in *Zumerling v. Devine*, 769 F.2d 745 (Fed.Cir.1985). Mindful of the doctrine of stare decisis and of the reluctance of courts to overrule recent decisions, and in full recognition that any alteration of the reasoning and conclusions in *Zumerling* would require in banc action by this court, I nevertheless feel compelled to outline my disagreement here, my first opportunity to do so.[1]

It is clear that this court in *Zumerling* did not expressly address nor, in my opinion, did it implicitly determine the effect of 5 U.S.C. § 5504(b) on the calculations relevant to the federal firefighters' pay entitlements. Unlike the majority, I have been convinced that section 5504(b) is quite relevant to both the result in *Zumerling* and the pay computations of federal firefighters in general. In my view, the plain language of 5 U.S.C. § 5504(b) unavoidably compels the conclusion urged by appellants that the annual rate of basic GS pay of every federal employee, including federal firefighters such as appellants, is and should only be considered as "payment for employment during 52 basic administrative workweeks of 40 hours."[2]

---

1. I further note that the ramifications resulting from the adoption of my view might not be confined to *Zumerling* as the conclusions contained therein with which I disagree have been relied on in subsequent decisions of this court and of the Claims Court. *See, e.g., Slugocki v. United States*, 816 F.2d 1572 (Fed.Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 486, 98 L.Ed.2d 484 (1987); *Wheeler v. United States*, 9 Cl.Ct. 579 (1986).

2. Contrary to the majority's suggestion, the 1986 amendment deleting the specific language relied on by the appellants from the statute has no relevance to the present appeal. If the amendment was not intended to be a substantive change, it is clear that prior to the amendment basic pay was intended by Congress to be compensation for only 40 hours per week and therefore must still be considered as such. On the other hand, if the amendment was intended to

Neither the majority nor the appellees have offered, nor have I been able to discern on my own, any supportable justification for excluding firefighters from the plain language of 5 U.S.C. § 5504(b). In fact, federal firefighters were not excepted from the provisions of the section when it was enacted and there has been no suggestion or showing that subsequent statutory enactments and amendments affecting the pay of the firefighters did anything to alter the section's applicability to federal firefighters. Actually, as discussed below, the legislative histories of the subsequent statutes and amendments provide additional support for this conclusion. *Cf. Horner v. Jeffrey*, 823 F.2d 1521 (Fed.Cir.1987) (plain and unambiguous language of a statute, especially where supported by clear legislative history, is determinative even where agency regulation in conflict with statute has been consistently applied over long period). Thus, in accordance with this court's actions in *Jeffrey* where an agency's regulations were in conflict with a statute, I must conclude that those portions of FPM Letter 551–5 which are contrary to the intentions of Congress, as evidenced in plain statutory language and confirmed by accompanying legislative history, are invalid with respect to firefighters such as appellants.[3] *See Board of Governors of the Federal Reserve System v. Dimension Financial Corp.*, 474 U.S. 361, 368, 106 S.Ct. 681, 686, 88 L.Ed.2d 691 (1986) (traditional deference courts pay to agency interpretation is not to be applied to alter clearly expressed intent of Congress); *Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 8 L.Ed.2d 694 (1984); *Jeffrey*, 823 F.2d at 1531 (and cases cited therein).

As appellants point out, the predecessor to 5 U.S.C. § 5504(b) was enacted as part of the Federal Employees Pay Act of 1945 [hereinafter "1945 Act"], Pub.L. No. 79–106, ch. 212, § 604(b) & (d)(1), 59 Stat. 295, 303–04 (codified at 5 U.S.C. § 944 (1946)). The 1945 Act was part of a comprehensive post-war effort to improve wage and salary administration in the federal service and included, inter alia, pay provisions for overtime, night, and holiday work. The 1945 Act provided that federal employees covered by its provisions would receive compensation for all officially ordered or approved hours of employment in excess of 40 in any administrative workweek at overtime rates, dependent upon their annual basic salary, of up to one and one-half times their basic hourly rate of compensation. *See id.* § 201, 59 Stat. at 296–97. Most importantly, for the purposes of the present discussion, federal firefighters were included among the employees covered by the hourly pay provisions of the Act and therefore received overtime compensation for all hours worked in excess of 40 in any single week.

In 1954, Congress amended section 201 of the 1945 Act to provide overtime pay at one and one-half rate for all employees whose basic salaries did not exceed the maximum scheduled rate of grade GS–9. Federal Employees Pay Act Amendments of 1954, Pub.L. No. 83–763, ch. 1208, § 203, 68 Stat. 1105, 1109 [hereinafter "1954 Amendments"]. However, by this time Congress had also recognized that firefighters and law enforcement personnel did not fit well within the standard overtime-pay provisions of the 1945 Act and that the inclusion of those two groups caused serious administrative problems as a result of the large amount of irregular overtime or standby duty required of these employees. *See* S.Rep. No. 1992, 83rd Cong., 2d Sess.,

---

be substantive and to alter the pay entitlements of federal firefighters, it has no relevance here as the present suit was filed prior to March 1, 1986, the effective date of the amendment. *See* Pub.L. No. 99–272, § 15203(b), 100 Stat. 82, 334 (1986).

**3.** Other cases cited in the majority opinion and the briefs involving the same or similar issues have involved federal law enforcement personnel in addition to or in lieu of firefighters.

While similarly situated to firefighters in many respects, I express no opinion here as to whether the conclusions reached in this opinion would be applicable to federal personnel other than firefighters. *See, e.g., Slugocki*, 816 F.2d 1572 (Deputy United States Marshals); *Zumerling*, 769 F.2d 745 (firefighters and law enforcement personnel); *Alexander v. United States*, 1 Cl.Ct. 653 (1983) (customs service employees).

reprinted in 1954 U.S.Code Cong. & Ad. News 3816, 3834 (report of U.S. Civil Service Commission on S. 2665). As a result, Congress enacted a new title into the 1945 Act which provided for premium compensation on an annual basis at a rate not to exceed 25 percent of the basic pay for GS–9 in lieu of all overtime, night, and holiday pay for all employees who, like the firefighters in this case, spent a substantial amount of time in a standby status. That new title, in part, provided the following:

Sec. 401. The head of any department, independent establishment, or agency, including Government-owned or controlled corporations, or of the municipal government of the District of Columbia may, with the approval of the Civil Service Commission, provide that—

(1) any officer or employee in a position requiring him regularly to remain at, or within the confines of, his station during longer than ordinary periods of duty, a substantial part of which consists of remaining in a standby status rather than performing work, shall receive premium compensation for such duty on an annual basis in lieu of premium compensation provided by any other provisions of this Act. Premium compensation under this paragraph shall be determined as an appropriate percentage (not in excess of 25 per centum) of such part of the rate of basic compensation for any such position as does not exceed the minimum scheduled rate of basic compensation provided for grade GS–9....

1954 Amendments, § 208, 68 Stat. at 1111.[4]

Thus, by 1954, Congress had explicitly recognized that firefighters did not work a standard 40–hour workweek like other federal employees and had included specific, separate provisions in the pay statutes to account for the differences. But it is also clear that prior to 1954, federal firefighters had been deemed to be paid their basic GS pay for 52 consecutive workweeks of 40 hours, just like other federal employees. The government argues here that the adop-

tion of premium pay in 1954 indicates that section 5504(b) no longer had any applicability to those federal employees covered by the premium pay provisions contained in the new title. But it is undeniable, and the government concedes, that Congress did not expressly alter the provisions of the predecessor to 5 U.S.C. § 5504(b) to provide an exception for federal firefighters. Repeals by implication can only be justified where the earlier and later statutes cannot be reconciled. *Morton v. Mancari*, 417 U.S. 535, 550, 94 S.Ct. 2474, 2482, 41 L.Ed. 2d 290 (1974); *Jeffrey*, 823 F.2d at 1527. However, as will be seen, no fatal irreconcilability exists in the present case to support an implied repeal of section 5504(b) with respect to federal firefighters. In fact, since premium pay was designed to compensate only for the hours worked in excess of 40 in a given week, the premium pay statutes are in perfect harmony with the language of section 5504(b) making basic pay attributable only to the first 40 hours of the workweek.

Following the addition of the new title in the 1954 Amendments, firefighters did not receive any one and one-half time compensation for overtime as the premium pay and basic pay were the sole compensation paid to the firefighters, regardless of the number of scheduled and unscheduled hours worked. *Cf. Bean v. United States*, 175 F.Supp. 166, 146 Ct.Cl. 267 (1959). However, Congress soon realized that the firefighters and other classes of employees subject to long standby duty were the only salaried federal employees who received no compensation for unscheduled and irregular overtime duty performed beyond their regularly scheduled tours of duty. *See* H.Rep. No. 1870, 85th Cong., 2d Sess., *reprinted in* 1958 U.S.Code Cong. & Ad. News 3047, 3048 (report on S. 1901). Therefore, Congress amended the new section 401 added by the 1954 Amendments to allow the firefighter one and one-half time overtime compensation for "irregular, unscheduled overtime duty in excess of his

---

**4.** By 1970, the upper limit for such pay had been changed to the minimum rate of basic pay

for GS–10. *See* 5 U.S.C. § 5545(c)(1) (1970).

regularly scheduled weekly tour," such as when a fire emergency required a firefighter to work beyond the end of his regular tour of duty. Act of July 18, 1958, Pub.L. No. 85–525, 72 Stat. 363 (codified at 5 U.S. C. § 926 (1958)) [hereinafter "1958 Amendment"]; *cf. Burich v. United States,* 366 F.2d 984, 177 Ct.Cl. 139 (1966), *cert. denied,* 389 U.S. 885, 88 S.Ct. 152, 19 L.Ed.2d 182 (1967). As explained in the House Report accompanying the 1958 Amendment, "[the premium pay compensation system] will remain in effect *but will represent compensation only for those hours of work in excess of 40 hours per week* performed by an employee *within his regularly scheduled tour of duty.*" H.Rep. No. 1870, 85th Cong., 2d Sess., *reprinted in* 1958 U.S.Code Cong. & Ad.News at 3048 (emphasis added).

The above legislative history confirms that premium pay was intended by Congress to be considered as compensation for only those hours of work in excess of 40 hours per week performed by an employee within his regularly scheduled tour of duty. Unfortunately, this conclusion suggests that the statement from *Zumerling* that the "firefighters' premium pay is not received in return for any particular hours of work" is not entirely accurate. *See* 769 F.2d at 751. In actuality, an employee's premium pay is received for an identifiable portion of work—those hours in an employee's regularly scheduled tour of duty in excess of the first 40 hours per week compensated by basic GS pay in accordance with 5 U.S.C. § 5504(b). In the case of the appellants, therefore, their basic pay should be considered payment only for the first 80 hours in each scheduled 144–hour work period and their premium pay properly should be considered payment only for the last 64 hours of each scheduled work period.

However, the issue raised by appellants here as to the proper calculation of their overtime entitlement under the provisions of the FLSA cannot be resolved solely by concluding that basic pay under 5 U.S.C. § 5504(b) is attributable only to 40 hours per week and by attributing premium pay to the remaining regularly scheduled hours

in excess of 40 each week. The appellants expressly stated that they were not challenging any of the conclusions in *Zumerling* with respect to the regular rate calculation itself; however, in order to resolve properly the challenges that appellants do make, reexamination of those conclusions is unavoidable, especially in light of the heretofore unrecognized applicability of section 5504(b) to the pay entitlement calculation.

As discussed in the majority opinion, the firefighters became entitled in 1975 to additional compensation under the amendment to the FLSA which became section 207(k). Under section 207(k), a federal firefighter is to receive compensation at a rate not less than one and one-half times his regular rate for tours of duty in which the aggregate hours exceed a statutorily defined "maximum" number of hours which, in the case before us, is 106 hours in a 144–hour work period. *See Wheeler,* 9 Cl.Ct. at 581. *Zumerling* held that a firefighter's regular rate as calculated under 29 U.S.C. § 207(e) is equal to the employee's total remuneration (basic pay plus premium pay) divided by the total number of hours worked in a work period (144 hours). 769 F.2d at 749–52. The *Zumerling* decision also concluded that premium pay did not fall within the statutory exclusions of 29 U.S.C. § 207(e) and therefore rejected arguments that the "total remuneration" should not include premium pay received pursuant to 5 U.S.C. § 5545(c)(1). *Id.* at 752. Although in my opinion the characterization of premium pay as generally compensating the employees for each hour of work is not what Congress intended, it does not appear that adoption of the view as outlined in this opinion would require modification of the regular rate calculation previously upheld in *Zumerling.*

Even though the firefighters' premium pay was actually intended to compensate for regularly scheduled hours worked in excess of 40 in a week, it does not necessarily follow that such premium pay should be considered as an overtime premium payment under the FLSA provisions in Title

29. As recognized by the *Zumerling* decision:

> Simply because the remuneration is labeled "premium pay" under Title V does not mean that it is excluded as premium pay under the FLSA. Section 7(e) does not provide a blanket exclusion of premium pay; rather only premium pay received for certain activities is excluded.

769 F.2d at 751.

When it was first enacted in the 1954 Amendments, premium pay was an increased percentage of annual basic pay paid in lieu of overtime, holiday, and other premium compensation. With respect to firefighters, the premium pay provided under 5 U.S.C. § 5545(c)(1) is a percentage of annual basic pay given in recognition of the long periods of standby duty as part of the employee's normal working hours and is not covered by any of the exceptions noted in 29 U.S.C. § 207(e). *See* 29 C.F.R. § 778.308 ("to qualify as an overtime premium under section 7(e)(5), (6), or (7), the extra compensation for overtime hours must be paid pursuant to a premium rate which is ... a rate per hour"); *cf. Slugocki*, 816 F.2d at 1578. As pointed out by the government, unlike other forms of premium pay contained in Title 5, the firefighters' premium pay is treated as basic pay in computing benefits for retirement, 5 U.S.C. § 8331(3)(D), life insurance, 5 U.S.C. § 8704(c)(1), severance pay, 5 U.S.C. § 5595(c), and workers compensation, 5 U.S.C. § 8114(e). Thus, the holding in *Zumerling* that premium pay is "not an overtime payment, but a means of generally compensating the employees given the confines of the federal pay schedule," 769 F.2d at 751, is the proper interpretation in the context of the FLSA provisions in Title 29.

Therefore, as was concluded in *Zumerling*, the numerator of the regular rate calculation outlined in FPM Letter 551–5 properly includes both the firefighters' basic pay and premium pay. Similarly, *Zumerling* properly held that the regular rate is to be calculated based upon the total hours worked for the remuneration which, in the context of the facts of *Zumerling*, was correctly determined to be 144 hours.[5] However, based on my above conclusions, I must disagree with the holding in *Zumerling* affirming the formula contained in FPM Letter 551–5 which entitles an employee to additional compensation at a rate of one-half times the "regular rate" for each hour that the employee's tour of duty exceeds the maximum hours limitation of 29 U.S.C. § 207(k).

Section 207(k) clearly mandates that a firefighter receive not less than one and one-half times his regular rate for each hour worked in excess of the maximum number of hours for the employee's work period calculated in accordance with that section. The number of hours entitled to compensation under section 207(k) and the method of calculating the applicable regular rate are not part of the present dispute. The remaining issue to be considered is how much of the pay already received by appellants can be attributed toward the required one and one-half times their regu-

---

**5.** It is not clear whether the challenge to the overtime pay entitlements in the present case includes the situation where unscheduled or irregular overtime hours are worked. To the extent that it does, it would appear that only regularly scheduled hours should be used in the denominator of the calculation and that FPM Letter 551–5 should not include unscheduled overtime duty hours in the denominator. As noted in the legislative history accompanying the 1958 Amendments, premium pay was intended to compensate an employee only for those overtime hours within his regularly scheduled tour of duty and was not designed as compensation for unscheduled or irregular overtime worked in excess of the regularly scheduled work period. As noted in *Zumerling*, the Secretary of Labor provided that regular rate "is to be calculated 'by dividing [the] total remuneration (except statutory exclusions) in any workweek [or work period] by the total number of hours actually worked by [the employee] in that workweek [work period] for which the compensation was paid.'" 769 F.2d at 752 (quoting 29 C.F.R. § 778.109). Unscheduled overtime hours beyond the firefighters' normal tour of duty are not hours for which the compensation (basic pay or premium pay) included in the numerator was paid and therefore should not be part of the denominator in the regular rate calculation. *Cf. Lanehart v. Horner*, 818 F.2d 1574, 1583 n. 17 (Fed.Cir.1987) (finding Title 29 overtime pay for irregular overtime work outside of the normal scheduled work period not to be part of firefighters' customary and regular pay).

lar rate that they are entitled to as compensation for the last 38 hours in their work period. In my opinion, the court's deference to OPM's interpretation is inappropriate in this area of dispute as well.

FPM Letter 551–5 asserts that the employee's total remuneration calculation compensates the employee at 100 percent for all the hours in his tour of duty and the additional one-half thereby allows the employee to receive one and one-half times the regular rate at which he or she is employed. *Zumerling* affirmed this method of calculation, finding that the firefighters "receive their regular pay for each of the 144 hours they work" and "[b]y receiving an additional [one-half]<sup>6</sup> regular rate salary for overtime hours, their overtime compensation equals the statutorily mandated amount." 769 F.2d at 752–53. In reaching its conclusion, the *Zumerling* court found the OPM calculation to be consistent with the Secretary's regulations. *Id.* at 753.

In my opinion, none of the Secretary of Labor's regulations involving salaried workers, pieceworkers, day-rate workers, two-or-more-job workers, etc., cited by the court in *Zumerling* or the parties here are directly applicable to the situations involving federal employees receiving basic GS pay in accordance with 5 U.S.C. § 5504(b) and premium pay in accordance with 5 U.S.C. § 5545(c)(1). The premium pay system devised by Congress for firefighters is unique to the federal pay schedule. None of the Secretary's regulations covers a pay system involving two types of annual pay received for chronologically distinct hours of work. So, rather than attempt to discern the closest parallel from the myriad of regulations covering equally varied pay systems not part of the present facts, I prefer to look to the language chosen by Congress in the statutes covering this unique federal pay system to determine whether OPM's instructions in FPM Letter 551–5 are reasonable.

As described above, Congress has clearly indicated that the firefighters receive basic pay for the first 80 hours in their 144–hour work period and premium pay for the excess hours in their regularly scheduled work period. Therefore, under the pay system devised by Congress, the firefighters cannot be held to receive their regular rate for any of the hours worked in their work period because their regular rate is merely a fictional rate utilized solely in calculating their overtime entitlement under the FLSA. Thus, while mathematically supportable, the additional one-half regular rate method employed by OPM is contrary to statute and must fall. *See Jeffrey,* 823 F.2d at 1531–32.

Since only premium pay is received for the hours in excess of 80 in their 2–week work period, appellants' position is that the government is only entitled to offset the amount of premium pay attributable to each of the last 38 hours from the one and one-half times regular rate due as compensation for those hours. In its attempt to discredit appellants' arguments, the government argues that the only time that the FLSA allows an employer to take a credit against an obligation to pay FLSA overtime pay is when the employer already is paying "extra compensation provided by a premium rate." *See* 29 U.S.C. § 207(h). Since the premium pay under 5 U.S.C. § 5545(c)(1) has already been determined not to be a premium rate for the purposes of exclusion under section 207(e) from the regular rate calculation, the government's argument has arguable initial force, although perhaps not in the manner intended by the government.<sup>7</sup>

However, the language of section 207(k) makes it clear that the compensation due under that section for hours worked in

---

6. In the official Reporter, this was incorrectly described as "an additional one-hour regular rate salary." 769 F.2d at 753.

7. Actually, the same argument appears to undermine the government's position in this appeal as well. Since the regular rate calculated for firefighters is a weighted average of the basic pay and premium pay received, neither of which is a premium rate under section 207(e), if the argument were accepted, the government also would be prevented from offsetting the regular rate derived from the "nonpremium" rates against the one and one-half times regular rate due under section 207(k).

excess of the maximum number is not a lump-sum figure, but a minimum amount below which the employee's compensation for those hours must not fall. *See* 29 U.S. C. § 207(k) (no violation of section if employee receives "compensation at a rate not less than one and one-half times the regular rate at which he is employed"). Under 5 U.S.C. § 5545(c)(1), Congress has clearly provided premium pay as compensation for those hours worked in excess of 80 in the 2–week work period, including the 38 covered by the provisions of 29 U.S.C. § 207(k). As provided in FPM Letter 551–5, to the extent that the FLSA provides a greater overtime benefit to employees than does the benefit payable under Title 5, they are entitled to the FLSA benefit, but they are not entitled to combined benefits from both titles. *See Lanehart*, 818 F.2d at 1576. Since the amount received by appellants for each of the 38 hours in question under Title 5 is less than that provided in Title 29, they would be entitled to the greater figure, but not both amounts.

Nevertheless, my agreement with the appellants' central contention as to the meaning and application of section 5504(b) does not lead to adoption of their asserted computation mathematics for their overtime pay entitlements under 29 U.S.C. § 207(k). As stated above, I do not agree with the *Zumerling* conclusion that premium pay should be considered part of the wage received for every hour worked. Not surprisingly, this is one statement from *Zumerling* that went unchallenged by appellants since attributing premium pay to each hour worked rather than to the hours in excess of 40 each week would result in a higher recovery for appellants. Consistent with that view, I believe that the proper offset for appellants' premium pay already received should be $\frac{1}{64}$th of the premium pay, not $\frac{1}{144}$th of it as urged by appellants in light of *Zumerling*.

Thus, in order that appellants not receive compensation at a rate not less than one and one-half times their regular rate for the last 38 hours of their 144–hour work period, appellants should have received as their FLSA overtime compensation the difference between one and one-half times their regular rate and $\frac{1}{64}$ of their premium pay for each of the 38 hours. Since they only received one-half times their regular rate for those hours, the amount owed them for each of the 38 hours would be the difference between their regular rate and $\frac{1}{64}$th of their premium pay, subject to any proper adjustments not at issue in this appeal.

For the above reasons, I dissent from the majority opinion. As the government asserts that 29 U.S.C. § 259 shields it, as an employer, from any liability for back pay, I would remand the case to the district court for consideration of that issue, including a determination of whether it properly was and remains before that court.[8] If it is, the merits of the government's asserted section 259 defense should be passed on by the district court before we make any statement on the subject.

---

**8.** 29 U.S.C. § 259 provides, in pertinent part:
   (a) In any action or proceeding based on any act or omission ... no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay ... overtime compensation under the Fair Labor Standards Act of 1938, as amended ... if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regula-

tion, order, ruling, approval, or interpretation of the [Administrator of the Wage and Hour Division of the Department of Labor].... Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect.